IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN                                          PLAINTIFF

            v.                        Civil No. 10-3080

YOLANDA WATSON, Probation
Officer; MIKE PIPPIN, Assistant
Area Manager; KENT VILLINES,
Parole Officer; MIKE THOMAS, Area
Manager; JEFF TILLMAN, Assistant
Director, Parole Services; DAN ROBERTS,
Director, Parole Services; and
DAVE EBERHARD, Director                                  DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Daniel Ray Brown filed this civil rights action pursuant to 42 U.S.C. § 1983. He

proceeds *pro se* and *in forma pauperis*.

Defendants filed a motion for summary judgment (Doc. 42). The undersigned entered

an order (Doc. 49) directing Brown to complete, sign and return an attached questionnaire that

would serve as his response to the summary judgment motion. He has submitted his response

(Doc. 60). The motion is now ready for decision.

### 1. Background

On January 20, 2010, Brown filed a civil right lawsuit, case number 10-3006, against

Boone County, Arkansas, the City of Harrison, Arkansas, Boone County Sheriff Danny

Hickman, and Boone County Sheriff's Deputy Ryan Watson. *Plaintiff's Response* (hereinafter

*Resp.*) at ¶ 1. On August 20, 2010, Brown filed this action against Yolanda Watson, Mike

Pippin, Kent Villines, Mike Thomas, Jeff Tillman, Dan Roberts, and Dave Eberhard, alleging

that they violated his First Amendment rights by retaliating against him for filing case 10-3006,

-1-

and for filing grievances against former and current employees of the Arkansas Department of Community Correction (ADCC).  *Resp.* at ¶¶ 2-3.

At the times relevant to this complaint, Brown was on parole under the supervision of the ADCC.  Kent Villines was employed as a probation/parole agent by the ADCC.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 2 at ¶ 2.  From August 21, 2009, through July 26, 2010, Brown's parole case was assigned to Villines for supervision.  *Id.* at ¶ 3.

On March 19, 2010, Villines prepared a parole violation report seeking a parole absconder warrant for Brown's arrest.  *Defts' Ex.* 2 at ¶ 4.  The report set forth multiple violations of the terms of Brown's parole agreement.  *Id.* at ¶ 5.  Specifically, Brown was charged with the following violations: (1) failure to report as directed on February 19, 2010; (2) failure to obtain or maintain approved employment during his period of supervision; (3) moving from his approved residence without prior approval (current whereabouts unknown); (4) testing positive for methamphetamine on January 8, 2010; (5) ingesting methamphetamine on or about February 8, 2010; (6) failing to attend Technical Violator's Program (TVP) aftercare and continuing care program as required; (7) failure to complete any community service hours; (8) failure to remain abstinent on January 8, 2010, and February 8, 2010; and (9) failure to complete required community service.

Villines' supervisor, Mike Pippin, the assistant area supervisor, indicated his concurrence with the report.  *Defts' Ex.* 3 at ¶ 2-3.  Pippin's direct supervisor was the area manager, Mike Thomas.  *Id.* at ¶ 2.  Thomas' direct supervisor was Jeff Tillman, assistant director of probation and parole.  *Defts' Ex.* 5 at ¶ 2.

On April 30th, Brown states the car he was in was pulled over by the Harrison Police.  *Defts' Ex.* 1, Doc. 42-1 at pg. 37.  After he provided incorrect identification information, Brown

-2-

was arrested and charged with obstruction of government operations. *Id.* He believes the stop was just random. *Id.*; *Resp.* at ¶¶ 17-20.

Brown's first parole hearing was on May 19, 2010. *Defts' Ex.* 4(A) at pg. 1. Brown was appointed an attorney, Sharon Draper, to represent him. *Id.* After consultation with Draper, Brown decided to waive the hearing and go to the Malvern Technical Parole Violator's program. *Id.;* Defts' Ex. 1, Doc. 42-1 at pg. 27;[1] *Resp.* at ¶¶ 21-24. Subsequently, this waiver was rescinded by Thomas and Brown was to enter a residential treatment facility. *Defts' Ex.* 4(A) at pg. 1. For this reason, the Hearing Examiner made no decision on whether or not Brown had violated the terms of his parole. Defts' Ex. 1, Doc. 42-1 at pg. 27. The revocation report was held in abeyance.

Brown believed he had been "wronged by the parole officers in this system." *Defts' Ex.* 1, Doc. 42-1 at pg. 27. Brown indicates he submitted four grievances within a two week time period and then received a call from Thomas. *Id.* at pgs. 27 & 41-42. During the call, Thomas allegedly said his parole officers were in the wrong and he would help Brown by retracting the waiver and re-engage the parole revocation process. *Id.* at pg. 39. Rather than having another hearing Brown said Thomas was going to make sure he went to treatment. *Id*. Brown indicates Thomas was the only "person who took a stand and tried to do the right thing." *Id.* at pg. 59. Brown named Thomas as a Defendant because he let the other Defendants retaliate against Brown when they re-violated him. *Id.* at pg. 60.

Brown also maintains that he was not guilty of absconding. *Defts' Ex.* 1, Doc. 42-1 at pg. 28. He states his parents live in a separate residence in the basement of his brother's house; and he lived with his parents. *Id.* When Villines went to make a home visit, Brown maintains

---

[1]Defendants' Exhibit 1 is divided into two separate documents. The first is Doc. 41-1. The second is Doc. 42-1. The page numbers in both documents begin with page one and continue in numerical order. The page numbers referred to are the ones located on a header but on the documents when filed with the Court.

Villines went to his brother's residence not his parents' residence. *Id.* at pgs. 28-29; *Resp.* at ¶¶ 11-12. He also maintains that Y. Watson learned the truth about Brown's living arrangements and withheld the information from his attorney and the Hearing Examiner. *Defts' Ex.* 1, Doc. 42-1 at pg. 36; *Resp* at ¶ 16. Brown believes the absconding violation should have been removed prior to the hearing. *Defts' Ex.* 1, Doc. 42-1 at pg. 36. Instead, he maintains the absconding violation was not resolved until May 26, 2010. *Resp.* at ¶ 16.

On June 21st, Brown had an appointment with Villines. Defts' Ex. 1, Doc. 42-1, Doc. 41-2 at pg. 20. On that same day, Brown's son was on trial in Berryville. *Id.* Brown went to the trial and phoned Villines and "told him that my son was having a jury trial that day, that morning, and I was going to see my son." *Id.* Villines had problems with Brown missing the appointment and asked Brown to come and see him before he went to the trial. *Id.* Brown was already in Berryville when he called. *Id.*

On June 25th, Brown reported to the Harrison Probation and Parole Office for a scheduled meeting. *Defts' Ex.* 3 at ¶ 4. Thomas was aware that a warrant was being prepared for Brown's arrest on a hot check charge. *Id.* He contacted the Harrison Police Department to see if a warrant had been issued and if they wanted to pick Brown up. *Id.* The police department sent someone to pick Brown up. *Id.* Additionally, Brown tested positive for amphetamines so he was arrested for the parole violation. *Id.* A parole revocation hearing was set. *Id.* at ¶ 5.

Jim Williams has been employed as a hearing examiner with the Arkansas Board of Parole since January 1, 2010. *Defts' Ex.* 4 at ¶ 2. He was the hearing examiner at the May 19th hearing. Williams also presided over Brown's second parole revocation hearing on July 26th. *Defts' Ex.* 4 at ¶ 3. Villines testified that Brown tested positive for the use of methamphetamine on June 2, 2010. *Defts' Ex.* 4(A) at pg. 1. Villines also testified that Brown failed to report on

-4-

June 14, 2010, and June 21, 2010. *Id.* Finally, Villines testified that Brown had failed to provide any proof of employment while on parole. *Id.*

Following the hearing, Williams issued a written disposition report finding that Brown had committed certain parole violations and revoking his parole. *Id.* at ¶ 4. At the time of the hearing, the alleged violations considered were: condition 1, reports; condition 2, employment/education; condition 3, residence/travel; condition 4, laws; condition 6, alcohol/controlled substances; condition 8, fees; condition 9, cooperation; and condition 12, special conditions. *Defts' Ex.* 4(A) at pg. 1. Brown pled guilty to these violations with the exception of condition 2, employment/education. *Id.* Brown's parole was revoked; he was scheduled to appear before the Board of Parole in June 2011; and, he was directed to complete the TC Model prior to his release. *Id.* at pgs. 1-2. Brown appealed the revocation and the decision of the Hearing Examiner was affirmed. *Defts' Ex.* 4(B).

Between the months of May through July of 2010, Tillman received a series of letters from Brown related to grievances he had against the ADCC. *Defts' Ex.* 5 at ¶ 3. At the time, Brown was involved in a parole revocation procedure. *Id.* Tillman asserts that departmental practice was "to avoid interfering with the parole revocation process." *Id.* at ¶ 5.

Tillman sent letters of response to Brown on May 24th, June 1st, June 8th, and July 20th. *Defts' Ex.* 5 at ¶ 6. In each of the letters, Tillman explained that the "grievance process is not designed to be used during the parole revocation process." *Id.* Tillman stated the grievance process was designed to be used during regular supervision events. *Id.* at 5(A). Brown was also advised to plead his case to the Hearing Examiner. *Id.* Plaintiff denies he was in the midst of a parole revocation process. *Resp.* at ¶¶ 35-36. He maintains the revocation process ended on May 19th and did not begin again until June 25th. *Id.*

In a letter received at the Arkansas Board of Parole on July 29th, Plaintiff signed the letter with the name Bill Braxton. *Defts' Ex.* 1, Doc. 42-2, Exhibit 6 to the Deposition. Plaintiff stated that he used Bill Braxton as a pen name. *Defts' Ex.* 1, Doc. 42-2 at pg. 26. In a letter dated July 28th, Plaintiff stated: "The minutes of revocation hering will show that my mind was being controlled by the androidal rays from the satellite box. That made me forget to ask things." *Id.* at pg. 60. Brown testified he may have felt that the hearing examiner was a robot at the time. *Id.* at pg. 27. Brown no longer believed this. *Id.*

At his deposition, Brown testified that all of his interactions with the Defendants have been in connection with parole supervision. Defts' Ex. 1, Doc. 42-1 at pg. 11. Yolande Watson's husband is Sheriff's Deputy Ryan Watson. *Id.* Y. Watson is employed by the ADCC. *Id.* at pg. 12. Brown understood that she supervised probationers and not parolees. *Id.*; *Resp.* at ¶ 7. However, Brown conceded he did not know what ADCC policies and procedures were with respect to officers supervising both probationers and parolees. *Defts' Ex.* 1 at pg. 13.

Brown believes the first act of retaliation occurred when he went for a scheduled meeting with Villines but Villines was not at the office. *Defts; Ex.* 1 at pg. 23. He asserts Y. Watson "met [him] at the door and was kind of hasty and hateful and told [him] that Mr. Villines was not [t]here, to leave, he would make arrangements with the treatment center and contact [Plaintiff]." *Id.* at pg. 24; *Resp.* at ¶¶ 7-9. According to Brown, either Y. Watson did not tell Villines or he failed to call and make arrangements with the Wilbur Mills Treatment Center. *Defts' Ex.* 1. at pg. 25.

With respect to Pippin, Brown stated the only reason he would "step in" was to retaliate against Brown. *Defts'* Ex. 1, Doc. 42-1 at pg. 14. Brown did not believe the assistant area manager would assist with the supervision of a parolee. *Id.* At the May 19th hearing, Brown indicates Pippin  brought up the grievances and lawsuit Brown had filed on Pippin the year

-6-

before. *Id.* at pg. 43.  Brown maintains this put him under duress, intimated him, and made him feel uncomfortable.  *Id.* at pg. 43; *Resp.* at ¶ 21.  Brown believes this conduct constitutes retaliation. *Defs'* Ex. 1, Doc. 42-1 at pgs. 43-44.  Brown also asserts that Pippin was "hateful" and "disrespectful." *Id.*  In his response, Plaintiff asserts that Pippin "hit [him] on the back very very roughly and spoke in an evil voice and at the same time he squeezed plaintiff's neck area. *Resp.* at ¶¶ 21(d), 25(b), and 36(a)-(c).  Notably, Plaintiff does not mention this use of physical force in any of his grievances, his letters regarding his appeal of the revcoation, or in his deposition. *Defs' Ex.* 1, at Doc. 42-1 at pg. 92.  Instead, he testified that Pippin and Villines had threatened to "get" Plaintiff the first chance they got. *Id.* at pgs. 92-93.  Plaintiff took this statement to mean that his life was being threaten.  *Id.*

Brown also believes Pippin retaliated against him by starting the May 19th hearing thirty minutes early. *Defs' Ex.* 1, Doc. 42-1 at pg. 51.  Brown asserts his witnesses, if they were going to come, would not have been there at that time.  *Id.*  Brown indicated Pippin was in charge of the satellite operations.  *Id.* at pg. 52.

With respect to Villines, Brown testified he was supervising parolees in the Boone County area.  Defs' Ex. 1, Doc. 42-1 at pg. 15.  Since Villines was assigned to Brown's case, Brown did not believe any other officer would assist with supervising him.  *Id.*  In fact, after the warrant for absconding was withdrawn, Brown contends both Villines and Pippin were angry about that and stated "they would get me as soon as they could." *Id.* at pg. 56.

Brown contends the retaliation against him stemmed not only from his filing of a civil complaint against Ryan Watson and the Boone County Sheriff's Office but also as a result of his filing grievances against the parole officers.  Defs' Ex. 1, Doc. 42-1 at pg. 19.  The case against Ryan Watson was based on his failure to secure and close a storage facility that belonged to Brown. *Id.* at pg. 20.  As a result of the storage locker not being secured, Brown maintained that

his property was stolen. *Id.* Brown asserts that Y. Watson retaliated against him for filing the lawsuit against her husband. *Id.* at pg. 21. He asserts that she "rubs elbows with her partners here and [he] believe[s] they had a little bit of animosity towards [him] because of the lawsuit." *Id.*

With respect to Roberts, Eberhard, and Tillman, Brown testified that "they retaliated or supported the retaliation whenever they done nothing to stop the retaliation itself." *Defts' Ex.* 1, Doc. 42-1 at pg. 22; *Resp.* at ¶ 35. With regard to Tillman, Brown maintains he knew what was going on and did nothing. *Defts' Ex.* 1, Doc. 42-1 at pg. 56; *Resp.* at ¶ 10. Brown sent these Defendants letters. *Defts' Ex.* 1, Doc. 42-1 at pg. 61. One time, in either May or June, Brown indicates he did speak to Roberts on the telephone. *Id.* Roberts stated he would "get on the phone and call down and see what was going on down here." *Id.* at pg. 62.

Plaintiff submitted the following grievances in letter form: (1) dated May 19, 2010, apparently sent to Thomas with a request that it be forwarded to Tillman and Leroy Brownlee;[2] (2) dated May 19th and addressed to Pippin; and (3) dated May 19th and addressed to Tillman. *Defts' Ex.* 1, Doc. 42-2, at pgs. 49-54. Plaintiff also submitted three documents directed to the Arkansas Board of Parole having to do with his appeal from the parole revocation that discuss the behavior of the parole officers. *Id.* at pgs. 55-63.

## 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2]This grievance refers to his second grievance filed on May 18, 2010. No grievances dated May 18th or earlier are part of the record. However, there is more than one grievance dated May 19th.

AO72A
(Rev. 8/82)

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**3.  Discussion**

Defendants have now moved for summary judgment contending they are entitled to summary judgment on the merits of all Brown's claims.[3]  Further, they maintain they are entitled to judgment in their favor on qualified immunity grounds.

In *L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) the court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id.* (internal quotation marks and citations omitted).  "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz,*

---

[3] At his deposition, Plaintiff testified that he did not really have grounds for a false arrest/detention claim. *Defts' Ex.* 1, Doc. 42-2 at pg. 17.  He also testified that he could not argue with the Hearing Examiner's decision to revoke him.  *Id.*  He believes the actions taken by the Defendants were all acts of retaliation that set in motion his arrest, detention, and parole revocation. *Id.* at pgs. 17-18.  In his summary judgment response, he indicates the arrest was Pippin's "fulfilling his threats of retaliation." *Resp.* at ¶ 30.

-9-

382 F.3d 870, 876 (8th Cir. 2004).  The filing of a grievance and the filing of a lawsuit is protected First Amendment activity.  *Haynes v. Stephenson,* 588 F.3d 1152, 1155-56 (8th Cir. 2009).

With respect to the first prong, it is undisputed that Plaintiff had filed a lawsuit against Ryan Watson, Y. Watson's husband, on January 20, 2010, *Brown v. Boone County, et al*, Civil No. 10-3006. It is also undisputed that Plaintiff submitted grievances about Defendants' conduct. The first grievance of record is dated May 19, 2010.  The submission of grievances therefore could not be a factor in any actions taken prior to May 19th.  Clearly, Brown engaged in protected activity.

With respect to the second prong, Plaintiff's parole was revoked--clearly an adverse action. However, Plaintiff does not deny that he failed to adhere to the terms of his parole.  He also agrees that the Hearing Examiner had the right to revoke his parole.

With respect to the third prong, that the adverse action was causally related to the protected expression, I do not believe there is a question of fact as to whether the steps leading up to the revocation, or the revocation of parole,  were causally related to Plaintiff's exercise of the right of free speech.  Plaintiff pled guilty to numerous conditions of his parole.  A revocation hearing was held with a Hearing Examiner and the decision was made by the Hearing Examiner. Plaintiff has failed to show a genuine issue of material fact as to whehter Defendants took adverse action against him retaliation for engaging in constitutionally protected activity.  *See Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996)(inmate claiming retaliation is required to meet substantial burden of proving actual motivating factor for adverse action).  Moreover, Tillman, Roberts, and Eberhard, were not personally involved in the alleged retaliatory conduct.  *See*

-10-

*Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985(to be liable, defendant in § 1983 action must be personally involved in or directly responsible for the conduct that caused the injury).

### 4.  Conclusion

I therefore recommend that Defendants' motion for summary judgment (Doc. 42) be granted and this case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of February 2013.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-11-